IN THE UNITED STATES DISTRICT COURT FOR THE
EASTERN DISTRICT OF VIRGINIA

Alexandria Division

MAIRE WICHARD, IN HER CAPACITY    )
AS EXECUTOR OF THE ESTATE OF      )
GARY WICHARD,                     )
                                  )
        Petitioner,               )
                                  )
        v.                        )        1:15cv1722 (JCC/TCB)
                                  )
TERRELL SUGGS,                    )
                                  )
        Respondent.               )

**M E M O R A N D U M   O P I N I O N**

This matter is before the Court on a petition to confirm an arbitration award.  The underlying arbitration award involved a contract dispute between Terrell Suggs, a professional football player, and his former agent, Gary Wichard.  The arbitrator found in favor of Mr. Wichard's estate and awarded the estate $234,800.00 in agent fees for the 2014 season.  Two motions are currently pending before the Court: (1) the estate's motion to confirm the arbitration award [Dkt. 3]; and (2) the estate's motion for entry of judgment pursuant to 9 U.S.C. § 9 [Dkt. 4].

For the following reasons, the Court will confirm the arbitration award and enter judgement against the respondent.

1

## I. Background

Because Respondent has filed no opposition to the motions, Petitioner's statement of facts is accepted as admitted.  The following undisputed facts are taken from Petitioner's Petition to Confirm Arbitration Award [Dkt. 1] and Petitioner's Memorandum in Support of Motion to Confirm Arbitration Award [Dkt. 5].  Gary Wichard ("Mr. Wichard" or "Petitioner") was a certified National Football League Players Association ("NFLPA") Contract Advisor and a principal in the sports management firm ProTect Management until his death on March 11, 2011.  On January 3, 2003, Mr. Wichard entered into a Standard Representation Agreement ("SRA") with Respondent Terrell Suggs ("Mr. Suggs" or "Respondent").  On or about July 15, 2009, Suggs and the Baltimore Ravens Limited Partnership, which operates as a member of the National Football League ("NFL") under the name of the Baltimore Ravens (the "Ravens"), executed a five (5) year contract which Wichard negotiated on Suggs' behalf (the "2009 Contract").  The 2009 Contract included an option for the 2014 season at a salary of $7,800,000 which was exercised by the Ravens during March 2010.  The exercise of this option automatically extended the 2009 Contract term until the end of the 2014 season.  Pursuant to Section 4 of the Wichard SRA, Wichard was entitled to receive three percent (3%)

2

of the compensation received by Suggs for his services rendered in negotiating the 2009 Contract.

After Wichard's death on March 11, 2011, Suggs signed a new SRA with Joel Segal on November 15, 2011.  On February 17, 2014, Segal renegotiated and Executed a new five (5) year contract on Suggs' behalf (the "2014 Contract").  The 2014 Contract provided for Suggs to receive $12,000,000 for the 2014 NFL Season, exceeding the $7,800,000 previously negotiated by Wichard for the same season under the 2009 Contract.

Paragraph 12 of both the Wichard and the Segal SRA provides that when someone other than the original Contract Advisor renegotiates a Contract which the original Contract Advisor had previously negotiated and the renegotiated compensation exceeds the original compensation, the player still owes the original Contract Advisor commissions on the compensation amount negotiated by the original Contract Advisor.

Suggs voluntarily paid the commissions due on amounts received by him under the 2009 Contract for the 2009 through 2012 NFL seasons.  Suggs then failed to pay the amount owed by him to the Wichard Estate on account of the compensation earned by him during the 2013 NFL season (the "2013 Commission").  Both the Estate and Suggs filed grievances with the National Football League Player's Association ("NFLPA") pursuant to Section 5 of the NFLPA Regulations Governing Contract Advisors, as the SRA

required all disputes thereunder to be resolved exclusively through the NFLPA's arbitration procedures.  The NFLPA's regulations provide that its arbitration procedure shall be the exclusive method for resolving all disputes concerning "the meaning, interpretation, or enforcement of a fee agreement."

An arbitration hearing was held on September 23, 2014 (the "First Arbitration").  On December 4, 2014, Arbitrator Roger P. Kaplan found that Suggs was obligated to pay commissions in the amount of $172,800 to the Wichard Estate as a result of compensation Suggs received for the 2013 NFL season (the "First Award").  This Court confirmed the First Award on March 25, 2015, and entered a money judgment against Suggs, upon which the Wichard Estate collected in full.  In confirming that award, the Court found that the First Award drew its essence from the SRA, that the SRA did not violate public policy, and that Arbitrator Kaplan did not act in manifest disregard of the law.  *Wichard v. Suggs*, 95 F.Supp.3d 935, 945–47 (E.D. Va. 2015).

Suggs then failed to pay the amount owed to the Wichard Estate as a result of the compensation Suggs received for the 2014 NFL season.  Petitioner filed a grievance against Suggs on April 24, 2015, and on August 5, 2015, Suggs answered the grievance and asserted defenses identical to those

previously rejected in the First Award and this Court's subsequent confirmation of that award.

On October 26, 2015, Arbitrator Kaplan held an arbitration hearing (the "Second Arbitration"), wherein both Petitioner and Suggs had the opportunity to present evidence in support of their respective positions.  Because the issues raised in the Second Arbitration were extremely similar to those raised in First Arbitration, Arbitrator Kaplan admitted the transcript of the First Arbitration hearing into evidence without objection.  On December 16, 2015, Arbitrator Kaplan issued his opinion and award (the "Second Award"), wherein he found, *inter alia*, that Suggs owes the Estate $234,800 in commissions on account of compensation received by Suggs during the 2014 NFL season.

The NFLPA Regulations provide at Section 5(E) that an Arbitrator's decision "shall constitute full, final and complete disposition of the grievance, and will be binding upon the player and Contract Advisor involved . . ." and they require that any money award granted by an Arbitrator be paid within ten (10) days.  More than ten (10) days have elapsed since the date of the Second Award, and Suggs has yet to pay any portion of the $234,800 awarded to Petitioner by the Second Award.

 On December 30, 2015, Petitioner filed a Petition to Confirm the Second Award requesting an order confirming the

Second Award as a valid an final arbitration award pursuant to 9
U.S.C. § 9 and entry of a judgment in favor of Petitioner
against Respondent for the sum of $234,800.  The same day,
December 30, 2015, Petitioner filed these Motions seeking
confirmation of the Second Award and entry of judgment against
Respondent, noticing a hearing for February 25, 2016, pursuant
to the Local Rules.  Respondent failed to file any opposition,
and the case is now ripe for decision.

## II. Legal Standard

Collateral estoppel, or issue preclusion, precludes
the "successive litigation of an issue of fact or law actually
litigated and resolved in a valid court determination essential
to the prior judgment." *Lee v. Spoden*, 290 Va. 295 776 S.E.2d
798, 803-804 (2015).  Under Virginia law, a party is precluded
from relitigating a previously determined issue where: (1) the
party to be precluded or its privy was a party to the first
proceeding; (2) the prior proceeding resulted in a valid and
final judgment; (3) the issue to be precluded was actually
litigated in the prior proceeding; (4) the issue to be precluded
was essential to the prior judgment; and (5) there is mutuality
(i.e. the party invoking collateral estoppel would be similarly
bound if the prior proceeding had the opposite result).  *In re
Duncan*, 448 F.3d 725, 728 (4th Cir. 2006)(quoting *TransDulles*

6

*Center, Inc. v. Sharma,* 252 Va. 20, 22-23, 472 S.E.2d 274, 275 (1996)).

Federal courts favor arbitration agreements and awards stemming from such agreements. *Arrowhead Global Solutions, Inc. v. Datapath, Inc.*, 166 F. App'x 39, 43 (4th Cir. Feb. 3, 2006) (unpublished per curiam). To further this policy in favor of arbitration, "[j]udicial review of an arbitration award in federal court is severely circumscribed." *Wachovia Sec., LLC v. Brand*, 671 F.3d 472, 478 (4th Cir. 2012) (quoting *Apex Plumbing Supply, Inc. v. U.S. Supply Co., Inc.*, 142 F.3d 188, 193 (4th Cir. 1998)) (internal quotations omitted). Limited judicial review effectuates the very purpose of arbitration. *See, e.g., Apex Plumbing*, 142 F.3d at 193 ("[T]o allow full scrutiny of such awards would frustrate the purpose of having arbitration at all--the quick resolution of disputes and the avoidance of the expense and delay associated with litigation.") (citation omitted); *Brand*, 671 F.3d at 478 ("A court sits to determine only whether the arbitrator did his job--not whether he did it well, correctly, or reasonably, but simply whether he did it.") (internal quotation marks and citations omitted). Indeed, the Court's function here "is intended to be summary: confirmation can only be denied if an award has been corrected, vacated, or modified in accordance with the Federal Arbitration Act." *Taylor v. Nelson*, 788 F.2d 220, 225 (4th Cir. 1986). Thus,

federal courts must confirm an arbitration award absent "a
showing of one of the grounds listed in the Federal Arbitration
Act, or if the arbitrator acted in manifest disregard of law."
*Apex Plumbing*, 142 F.3d at 193 (citation omitted); *see also* 9
U.S.C. § 9.

Stated differently, "to prevent arbitration from
becoming a preliminary step to judicial resolution . . . [a]n
arbitration award will not be set aside unless it is irrational
or evidences manifest disregard for law." *Apex Plumbing*, 142
F.3d at 193 n.5 (citing *Eljer Mfg., Inc. v. Kowin Dev. Corp.*, 14
F.3d 1250 (7th Cir. 1994), *cert. denied*, 512 U.S. 1205 (1994);
*Upshur Coals Corp. v. United Mine Workers of Am., Dist. 31*, 933
F.2d 225, 229 (4th Cir. 1991)).  Cases where an arbitration
award is irrational "include those circumstances where an award
fails to draw its essence from the contract, or the award
evidences a manifest disregard of the law." *Patten v. Signator
Ins. Agency, Inc.*, 441 F.3d 230, 234 (4th Cir. 2006) (citing
*Apex Plumbing*, 142 F.3d at 193 n.5).

An arbitration award fails to draw its essence from
the contract "when an arbitrator has disregarded or modified
unambiguous contract provisions or based an award upon his own
personal notions of right and wrong." *Choice Hotels Int'l, Inc.
v. SM Prop. Mgmt., LLC*, 519 F.3d 200, 207 (4th Cir. 2008)
(quotation marks omitted).  Notably, "as long as the arbitrator

8

is even arguably construing or applying the contract and acting within the scope of his authority, that a court is convinced he committed serious error does *not* suffice to overturn his decision." *Id.* (quotation marks omitted and emphasis added). In this regard, a court's conclusion that "an arbitrator has misread the contract" is simply not sufficient to vacate the arbitration award. *Id.* (quotation marks omitted).

An arbitration award evidences a manifest disregard of the law "where the arbitrator understands and correctly states the law, but proceeds to disregard the same." *Patten*, 441 F.3d at 235 (citing *Upshur Coals Corp.*, 933 F.2d at 229) (internal alterations omitted). Such manifest disregard for the law necessarily results in an award that is "not rationally inferable from the contract," but instead a product of the arbitrator's amendment or alteration of the contract at issue. *Id.* at 236-37 (quoting *Mo. River Serv., Inc. v. Omaha Tribe of Neb.*, 267 F.3d 848, 855 (8th Cir. 2001) (internal quotation marks omitted); *Apex Plumbing*, 142 F.3d at 193 n.5).

In short, the party seeking to vacate the arbitration award "shoulders a heavy burden." *Patten*, 441 F.3d at 235 (quoting *Remmey v. PaineWebber, Inc.*, 32 F.3d 143, 149 (4th Cir. 1994)). With this standard in mind, the Court now turns to the merits of the parties' arguments.

### III. Analysis

Contract interpretation "is a question for the arbitrator.  It is the arbitrator's construction which was bargained for; and so far as the arbitrator's decision concerns construction of the contract, the courts have no business overruling him because their interpretation of the contract is different from his." *United Steelworks of Am. v. Enter. Wheel & Car Corp.*, 363 U.S. 593, 599 (1960) (citing *United Steelworkers of Am. v. Am. Mfg. Co.*, 363 U.S. 564 (1960)).  Moreover, in addition to the deference afforded to the arbitrator's legal conclusions and contract interpretation, the Court must also defer to the arbitrator's findings of fact. *Upshur Coals*, 933 F.2d at 229.  Under this extremely deferential standard and limited review of the arbitration award,[1] the Court will confirm the award and enter judgment in the Estate's favor against Respondent.

### A. Petition to Confirm Arbitration Award

Arbitrator Kaplan based his findings in the Second Award on his previous interpretation of the SRA made in the First Award.  Specifically, Arbitrator Kaplan held in the second award that "[a]s [he] found in Wichard-Suggs 1 [the First

---

[1] The Court has jurisdiction over this matter because the arbitration award was rendered in Alexandria, Virginia. *See* 9 U.S.C. § 9 (stating an application to confirm an arbitration award "may be made to the United States court in and for the district within which such award was made.").

Award], the obligation to pay Contract Advisor fees by Suggs was established by Wichard's successful negotiation of the NFL Player Contract on Suggs' behalf that ran through the 2014 NFL Season." (Second Award, Ex. F [Dkt. 6] at 17.)  In confirming the First Award, this Court found that this interpretation of the SRA did was not irrational, did not manifestly disregard the law or violate public policy, and drew its essence from the contract.  The arbitrator's finding that Suggs' obligation to pay Wichard was established when Wichard negotiated the 2009 Contract was essential to the First Award, and this Court's finding that those conclusions were valid was essential to the confirmation of that award.  As this issue was actually litigated in the prior case, there is complete identity of the parties, and the issue was necessary to the resolution of the prior case, Respondent is now estopped from challenging the Arbitrator's finding that Suggs' obligation to pay Wichard was established by Wichard's successful negotiation of the 2009 Contract and ran through the 2014 NFL Season.

Because Respondent is estopped from challenging the validity of the arbitrator's interpretation of the SRA, Respondent could only have challenged the arbitrator's novel findings of fact in this case.  However, this Court must defer to the arbitrator's findings of fact.  *Upshur Coals*, 933 F.2d at 229.  Additionally, it is undisputed that the 2009 Contract, as

negotiated by Wichard, ran through the 2014 NFL season and that Suggs both actually played the 2014 season and received compensation for the 2014 season.  In light of these undisputed facts and the deference the Court must show to the Arbitrator's findings of fact, the Court finds that the Second Award was not irrational, did not manifestly disregard the law or violate public policy, and drew its essence from the contract. Accordingly, the Court confirms the Second Award and will enter judgment in favor of Petitioner against the Respondent.

### B. The Estate's Request for Prejudgment Interest

The Estate also asks for prejudgment interest at a rate of ten percent under California law from December 16, 2015, the date the arbitration award was rendered.  (Pet. to Confirm at 5.)  The Court will award prejudgment interest from December 16, 2015 to the date of this Opinion and accompanying Order.

"Post-award, prejudgment interest is generally awarded at the discretion of the district court, and there is a presumption in favor of awarding such interest." *In re Arbitration Between Westchester Fire Ins. Co. v. Massamont Ins. Agency, Inc.*, 420 F. Supp. 2d 223, 226-27 (S.D.N.Y. 2005) (citing *In re Waterside Ocean Navigation Co. v. Int'l Navigation, Ltd.*, 737 F.2d 150, 153-54 (2d Cir. 1984)) (additional citation omitted); *see also Elevation Franchise Ventures, LLC v. Rosario*, No. 1:13-cv-719 (AJT/JFA), 2013 WL

12

5962984, at *1 (E.D. Va. Nov. 6, 2013) (awarding interest by summary order on the arbitration award from the date of the award to the date of entry of default judgment).  To determine the applicable interest rate, the Court must first determine what law applies.  Regardless of whether the Court has jurisdiction by diversity of citizenship or under the FAA, state law controls the applicable prejudgment interest rate.  *See Massamont Ins. Agency, Inc.*, 420 F. Supp. 2d at 226-27 ("The state statutory rate is to be applied even where, as here, federal law governs enforcement of the arbitration award."); *see also Thornhill v. Donnkenny, Inc.*, 823 F.2d 782, 787 (4th Cir. 1987) (finding that Virginia's conflict of law rules, which are used in diversity actions, generally honor contractual choice of law provisions) (citing *Bryant Elec. Co., Inc. v. City of Fredericksburg*, 762 F.2d 1192, 1196 n.8 (4th Cir. 1985).

Here, the SRA, the underlying contract at issue, is "construed, interpreted and enforced according to the laws of the State of California." (SRA, Ex. A [Dkt. 6] § 13.)  Under California law, interest accrues at a rate of ten percent from the date of the arbitration award resolving the contractual dispute, to the date of judgment in this Court affirming the arbitration award.  *See Britz, Inc. v. Alfa-Laval Food & Dairy Co.*, 40 Cal. Rptr. 2d 700, 713-14 (Cal Ct. App. 1995); *see also SCIE LLC v. XL Reinsurance Am., Inc.*, 397 F. App'x 348, 352-53

(9th Cir. Sept. 27, 2010); Cal. Civ. Code § 3289(b).
Accordingly, the Court will award prejudgment interest of
$7,140.49, calculated as ten percent per annum on the principal
amount owed, $234,800, from December 16, 2015 to the date of this
Opinion and accompanying Order confirming the arbitration award.

## IV. Conclusion

For the foregoing reasons, the Court will confirm the
arbitration award and enter judgment in favor of the Petitioner
against Respondent in the amount of $234,800 plus prejudgment
interest of $7,140.49, calculated as ten percent per annum on
the principal amount owed, $234,800, from December 16, 2015 to
the date of this Opinion and accompanying Order confirming the
arbitration award plus costs.  An appropriate Order shall issue.


                                    /s/
April 5, 2016                    James C. Cacheris
Alexandria, Virginia        UNITED STATES DISTRICT COURT JUDGE